George W. Pratt (USB #2642)
Jack L. Darrington (USB #18349)
**BUCHALTER. P.C.**
60 E. South Temple, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 401-8625
Email: gpratt@buchalter.com
Email: jdarrington@buchalter.com

*Attorneys for Plaintiff Onward Holding, LLC*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ONWARD HOLDING, LLC,<br><br>        Plaintiff,<br>vs.<br><br>PRIME CAPITAL VENTURES, LLC and KRIS ROGLIERI,<br><br>        Defendants. | **COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Civil No. 2:23-cv-00833-JCB<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Onward Holding, LLC ("**Onward**") complains of defendants Prime Capital Ventures, LLC ("**Prime**") and Kris Roglieri ("**Roglieri**"), and alleges as follows:

## PARTIES

1.    Onward Holdings, LLC ("**Onward**") is a limited liability company, organized under the laws of the state of Utah.

2.    The members of Onward are Durham Advisors, LLC and Onward Invest, LLC.

3.    Durham Advisors, LLC is a Utah limited liability company whose sole member is Matt Durham, who is a resident of the state of Utah.

1

4. Onward Invest, LLC is a Utah liability company, whose members are Honestum Scite, LLC, a Florida limited liability company, and Labore et Honore, LLC, a Utah limited liability company.

5. The sole member of Honestum Scite, LLC is James Harrison, a resident of the state of Florida.

6. The members of Labore et Honore, LLC are James Clarke, Andrea Clarke, and the JNC 101 Trust., a Trust organized under the laws of the state of Utah.

7. The Trustee of the JNC 101 Trust is Andrea Clarke.

8. James Clarke and Andrea Clarke are residents of the state of Utah.

9. Upon information and belief, Prime is a Delaware limited liability company, with its principal place of business in New York, New York.

10. The sole member of Prime is Kris Roglieri, who is a resident of the state of New York.

11. Prime alleged in its complaint in *Prime Capital Ventures, LLC v. Reign Financial International, Inc.*, Case No. 23-cv-207 (N.D.N.Y.), that "Prime is a citizen of the State of New York because Prime's sole member, Kris Roglieri, is a resident of the State of New York."

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

13. As described below, the Defendants are subject to the *in personam* jurisdiction of this Court because Prime transacted business in the state of Utah that has affected Onward in the state of Utah, and Prime is Roglieri's alter ego; Prime contracted to provide lending services in the state of Utah, and Prime is Roglieri's alter ego; and Prime defrauded Onward, and thus tortiously caused injury within the state of Utah, and Roglieri participated in Prime's tortious,

fraudulent conduct. Furthermore, the Defendants' conduct, giving rise to Onward's claims, was purposefully directed toward residents of the state of Utah, such that the Defendants should reasonably anticipate being subject to suit here, and the exercise of *in personam* jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

14. Venue is this Court is proper in under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

15. On or about September 7, 2022, Prime, as lender, and non-party Onward Partners, LLC dba Brandless ("**Brandless**"), as borrower, entered into a Business Expansion Line of Credit Agreement (the "**LOC Agreement**").

16. Onward is not and has never been a party to the LOC Agreement.

17. The purpose of the LOC Agreement was for Brandless to obtain a $107 million line of credit, to be used principally to finance the acquisition of consumer-packaged goods companies, focused on physical wellness, compatible with Brandless's business objectives.

18. On September 7, 2022, Brandless also executed a Promissory Note in favor of Prime, setting forth the terms on which advances under the LOC Agreement would be repaid.

19. Under the LOC Agreement, Brandless was required to deposit $20 million with Prime (referred to in the LOC Agreement as the "**ICA Payment**"), to establish an interest reserve account, to be used to pay interest payments owed under the LOC Agreement.

20. The LOC Agreement contemplated that the ICA Payment could be made by affiliates of Brandless. On page 2 of the LOC Agreement, "Interest Reserve" is defined as "credit on the books and records of Lender as an interest reserve on Advances under the LOC. This credit is provided on behalf of the Borrower when there is a contribution from a Borrower or its affiliate (e.g. JV Partner) received by Lender."

21. On or about September 22, 2022, Onward transferred $13.8 million (hereafter the "**Onward Advance**"), and Brandless transferred $6.2 million to Prime, to satisfy Brandless's obligation under the LOC Agreement to make the $20 million ICA Payment.

22. Prime knew that the Onward Advance was made by Onward.

23. Prior to making the Onward Advance, members of Onward's Board reviewed the LOC Agreement, and then discussed certain of its key provisions, set forth in ¶¶ 24 and 26 below.

24. In making the Onward Advance, Onward relied on the provision of the LOC Agreement (found in the Recitals and Definitions), requiring Prime to establish an Interest Reserve Account where the ICA Payment would be deposited; and Section 3.5 of the LOC Agreement, providing that "[i]nterest on the outstanding principal balance under the LOC shall be paid from the Interest Reserve Account at the rate and at the times set forth in the Promissory Note."

25. On August 5, 2022, there was a meeting at Prime's offices in Albany, New York, where representatives of Onward and Brandless (Cyd Tetro, Matt Durhan, and Rob Lund) had travelled, to meet with representatives of Prime and evaluate the merits of borrowing money from Prime. During their visit to Prime they met with Roglieri for two hours and posed numerous questions regarding the ICA Payment and the Interest Reserve Account. Roglieri told them that the ICA Payment would be deposited with a bank (later identified as Citibank), which would serve as the Interest Reserve Account.

26. In making the Onward Advance, Onward also relied on the following statements in Section 10.12 of the LOC Agreement: "Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fully fund the LOC in the full amount of [$107 million]," and "shall fully and timely fund each Advance requested by Borrower so long as no Event of Default has occurred . . . ."

27. The statements set forth in the LOC Agreement and at the August 5, 2022 meeting, described in ¶¶ 24-26 above, are referred to hereafter as the "**Representations**."

28. Onward relied on the Representations in transferring the $13.8 million Onward Advance, on or about September 22, 2022. At Prime's direction, the Onward Advance was made by wire transfer to a designated account at Citibank. Brandless wire-transferred the rest of the required ICA Payment – $6.2 million – to the same Citibank account.

29. Under Section 7.1 of the LOC Agreement, Prime was required to make the first Advance under the LOC Agreement, in the amount of $45 million, within 90 "banking business days" following the establishment of the Interest Reserve Account. Thus, Prime was required to make the first Advance on or before February 9, 2023.

30. Prime failed to make the first Advance under the LOC Agreement.

31. Thereafter, the Brandless management team was in regular contact with various representatives of Prime, by email and text messages, often speaking on a daily basis, regarding Prime's obligation to provide the funding required by the LOC Agreement. Over the ensuing months, representatives of Onward, Brandless, and Prime also met several times in person.

32. Over a period of several months, Onward was given a host of explanations and excuses for Prime's failure to fund, all the while encouraging Onward and Brandless to be patient while various issues were resolved. During this time period, representatives of Prime represented on numerous occasions that the awaited funding would be forthcoming soon.

33. Relying on Prime's repeated and seemingly forthright encouragement to wait patiently, and always convinced that Prime's agreed funding was near at hand, Brandless refrained, for many months, from pursuing alternative sources for the financing it needed to move forward with its business plans.

34. In April 2023, Brandless and Prime entered into two written Amendments to the LOC Agreement, dated April 14, 2023 and April 26, 2023 (the "**Amendments**"), under which

Prime made advances to Brandless, each in the amount of $5 million, for a total of $10 million. These disbursements were not treated as the first Advance under the Tranche Schedule in the LOC Agreement; instead, the Amendments provide that the funds were "Cash Advances," to be reimbursed to Prime from the proceeds of the first Advance under the LOC Agreement.

35. On September 14, 2023, Prime had still yet to make the first Advance under the LOC Agreement. On this date, its patience and trust having been exhausted, Brandless gave written notice to Prime, pursuant to Section 13.7 of the LOC Agreement (the "**Termination Notice**"), that Brandless was exercising its right to terminate the LOC Agreement.

36. The Termination Notice also demanded return of the ICA Payment which, according to Section 13.7(a) of the LOC Agreement, must be done within 30 "international banking days," a period which Prime acknowledged would expire on October 27, 2023.

37. Prime is entitled to a credit, against the $20 million ICA Payment, in the amount of the $10 million in disbursements made pursuant to the Amendments. Therefore, the total amount that was to be refunded by October 27, 2023 was $10 million.

38. On October 27, 2023, after repeated requests for confirmation, Prime claimed it was initiating two separate wires to Onward, one for $4 million and one for $6 million.

39. Prime claimed that the reason for two separate wires was wire transfer limits it had to comply with.

40. The wire for $4 million was deposited in an Onward account on October 27, 2023. The wire for $6 million did not arrive and appears to have been initiated to make Onward believe that Prime was in compliance with the LOC Agreement.

41. Thereafter, on November 10, 2023, Prime again claimed it was initiating payment of the outstanding amount it owed—$6 million. Instead, on that date, Prime sent payment for $2 million, leaving $4 million outstanding.

42. Prime does not dispute that Brandless properly terminated the LOC Agreement and that it was obligated to refund the $10 million remaining balance of the ICA Payment, and is now obligated to refund the remaining $4 million (the "**Remaining ICA Payment**").

43. Onward has suffered significant damages due to its loss of the use of the funds it advanced toward the ICA Payment. Based on its agreements with Brandless, Onward is entitled to a refund of the entire Remaining ICA Payment.

44. Prime has failed, despite assurances to the contrary, to timely refund the Remaining ICA Payment, on or before October 27, 2023.

45. Furthermore, Onward is now aware that the ICA Payment was not deposited into an Interest Reserve Account, as required by the LOC Agreement. If it had been, the refund could be made immediately. Instead, in recent correspondence Mr. Roglieri has told Onward that "we have had challenges based on circumstances out of our control," but "we have done our best to accommodate and work through these challenges." Mr. Roglieri also attempted to reassure Onward, stating that Prime is "doing [its] best to facilitate and speed up the ICA return process."

46. These face-saving excuses are not reassuring at all, however, considering that the ICA Payment should be held in an Interest Reserve Account, and immediately available for refund.

47. In more recent discussions with Prime, Brandless and Onward learned that instead, Prime and Roglieri – without notice to or the authorization of Onward or Brandless – had taken the $20 million ICA Payment from the Citibank account, and invested the money, for their exclusive benefit, in an undisclosed hedge fund.

48. Onward's apprehension was recently increased when it discovered the recent filing of a lawsuit in federal court in the Northern District of New York, *Sturm v. Prime Capital Ventures, LLC,* Case No. 1:23-cv-1033. This lawsuit was filed by another plaintiff who had advanced $2 million to make a required ICA payment, pursuant to a lending agreement with

Prime that was apparently structured just like Brandless's LOC Agreement. In the *Sturm* lawsuit the plaintiff alleges that the ICA Payment had, without authorization, been invested in a third-party hedge fund and that, after Prime completely failed to perform its obligation to fund, the borrower terminated the agreement by letter dated June 2, 2023, and demanded return of the ICA Payment. Thereafter, although the refund of the ICA Payment was due within 15 business banking days, by August 22, 2023 the refund still hadn't been made, and the lawsuit was filed. The *Sturm* lawsuit appears to be illustrative of the deceptive manner in which Prime conducts business.

49. In sum, upon receipt of Onward's ICA Payment, rather than deposit the ICA Payment in a segregated Interest Reserve Account as required by the LOC Agreement, Prime invested Onward's money for its own benefit, with a third-party hedge fund.

## FIRST CLAIM FOR RELIEF
### (Fraud - Prime)

50. Onward repeats and incorporates by reference the preceding allegations of this Complaint.

51. Prime made the representations, described in ¶¶ 24 and 26 above, to induce parties such as Onward to advance funds to Prime. Similarly, Roglieri, on behalf of Prime, made the representation described in ¶ 25 above, to induce Onward to advance funds to Prime.

52. All the Representations, on which Onward relied in advancing funds to make the ICA Payment, were false, as described in greater detail in ¶¶ 53 and 54 below.

53. Contrary to its representation in Section 10.12 of the LOC Agreement, that Prime "has the financial ability and wherewithal to fully fund the LOC in the full amount of [$107 million]," Prime in fact had, and continues to have no available resources to fund the LOC Agreement, and would need to look to other financing sources to provide the agreed funding.

54. Contrary to Prime's representation in the LOC Agreement that the ICA Payment would be deposited in an Interest Reserve Account, Prime used the ICA Payment for its own

8

unauthorized and undisclosed purpose – to invest in a hedge fund.  Until very recently, Prime did not disclose to Brandless or Onward that the ICA Payment would not be, and had not been, deposited into an Interest Reserve Account.

55. The Representations were made deliberately, for the purpose of inducing third parties, such as Onward, to advance substantial sums of money to Prime, ostensibly to fund an interest reserve, but in reality to acquire funds that Prime, without authorization, would use for other purposes.

56. In its dealings with Brandless, Prime could and should have anticipated that the false Representations would be communicated to Onward.

57. The Representations were material to Onward, which reasonably relied on the Representations in advancing funds to make the ICA Payment under the Loan Agreement.  Had Onward known that Prime had no available resources to make advances under the LOC Agreement, and that Prime would not deposit the ICA Payment into an Interest Reserve Account, but instead use those funds for its own undisclosed, unauthorized purposes, Onward would never have advanced any portion of the ICA Payment to Prime.

58. After the LOC Agreement was entered into between Prime and Brandless, and the ICA Payment was made to Prime, and Prime failed to make the first Advance under the LOC Agreement, Prime continued its pattern of fraudulent activity, by repeatedly reassuring Brandless and Onward that the first Advance would be forthcoming soon.  Brandless and Onward reasonably relied on Prime's post-default misrepresentations and thus delayed, to their detriment, the assertion of their legal rights against Prime.

59. As a result of Prime's fraudulent misrepresentations, Onward has suffered significant damages, including but not limited to the $4 million refund of the Remaining ICA Payment, and the loss of business opportunities made unavailable to Onward because it was fraudulently induced to advance funds to allow Brandless to make the ICA Payment.

60. As a result, Onward is entitled to an award of damages and other relief, as set forth in the Prayer for Relief below.

**SECOND CLAIM FOR RELIEF**
**(Participation in Tortious Conduct - Roglieri)**

61. Onward repeats and incorporates by reference the preceding allegations of this Complaint.

62. Roglieri is the sole member of Prime.

63. As the sole member of Prime, Roglieri bears ultimate responsibility for the contents of the LOC Agreement and the Prime website.

64. Roglieri is therefore responsible for the false Representations, described in ¶¶ 24-26 above, and thus participated in Prime's tortious, fraudulent conduct.

65. Furthermore, at the August 5, 2022 meeting at Prime's office, and during other conversations with representatives of Onward and Brandless, Roglieri failed to disclose that Prime did not have the financial ability to fund the LOC in the full amount of $107 million, or any portion of this amount, but would instead need to seek this funding from other financing sources.

66. Similarly, at the August 5, 2022 meeting at Prime's office, and during other conversations with representatives of Onward and Brandless, Roglieri failed to disclose that the ICA Payment would not in fact be deposited into an Interest Reserve Account, to be used to pay interest owed under the LOC Agreement, but would instead be taken and invested – for the exclusive benefit of Prime and Roglieri – in an undisclosed hedge fund.

67. By failing to disclose these critical facts to Onward and Brandless, Roglieri further participated in Prime's tortious, fraudulent conduct.

68. Onward is accordingly entitled to relief, as set forth in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF
### (Conversion - Prime)

69. Onward repeats and incorporates by reference the preceding allegations of this Complaint.

70. Prime has failed in its obligation to timely refund the Remaining ICA Payment, $4 million, on or before October 27, 2023.

71. Prime thus continues, intentionally and without authority, to exercise control over Onward's property.

72. The $4 million remaining balance owed from the ICA Payment belongs to Onward.

73. Prime has no authority in law or equity to withhold Onward's $4 million.

74. Prime has unlawfully exercised dominion over Onward's $4 million, in derogation of Onward's rights.

75. Onward has demanded the return of its money and, while acknowledging its obligation to return the Remaining ICA Payment, Prime has failed to return these funds.

76. Accordingly, Onward is entitled to relief, as set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment - Prime)

77. Onward incorporates by reference the preceding allegations of this Complaint.

78. Onward conferred a benefit on Prime by contributing to the advance of funds to make the ICA Payment.

79. By retaining the remaining balance of the ICA Payment without justification, Prime has been enriched at Onward's expense.

80. By using the ICA Payment to invest for its own unauthorized purposes, in a hedge fund or otherwise, Prime has been enriched at Onward's expense.

81. It would be inequitable to permit Prime to retain any portion of the ICA Payment, or any benefits Prime has obtained through the unauthorized use of the ICA Payment.

82. To avoid the unjust enrichment of Prime, Prime should be ordered to pay Onward the amount of the benefit conferred upon it by Onward.

83. Accordingly, Onward is entitled to relief, as set forth in the Prayer for Relief below.

## FIFTH CLAIM FOR RELIEF
### (Promissory Estoppel - Prime)

84. Onward repeats and incorporates by reference the preceding allegations of this Complaint.

85. In reliance on Prime's continuing post-closing promises and reassurances, that the first Advance would be made soon, as described in ¶¶ 31-33 above, Onward delayed the time of pursuing legal action to recover the ICA Payment, and during that time lost the opportunity to benefit from the investment of its funds.

86. Prime should be held to the terms of its promises and reassurances, and ordered to return the ICA Payment to Onward immediately, and to compensate Onward for any and all gains it has realized through the unauthorized use of the ICA Payment.

87. Prime is estopped to deny the consequences of its promises and reassurances to Brandless and Onward, and the damages Onward has suffered as a result.

88. Onward is accordingly entitled to relief, as set forth in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF
### (Piercing the Corporate Veil - Roglieri)

89. Onward repeats and incorporates by reference the preceding allegations of this Complaint.

90. Prime is a one-man legal entity, whose sole member and owner is Roglieri.

91. As such, Roglieri exercises complete control over the operations of Prime.

92. Although Prime represents itself as having significant assets – at least sufficient to fund the $107 million LOC Agreement – in reality Prime is significantly undercapitalized, and used as a façade through which funds are acquired, to be invested for Roglieri's exclusive benefit.

93. As described above, Roglieri personally perpetrated the fraudulent scheme to obtain the use and benefit of the Onward Advance, as well as the funds deposited by Brandless, to make the ICA Payment.

94. On information and belief, Roglieri has used the same fraudulent scheme to obtain money from other would-be borrowers.

95. In this case, the observance of Prime's corporate form, as an entity distinct from Roglieri, would sanction a fraud, promote injustice, and yield an inequitable result.

96. Onward is accordingly entitled to relief, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Onward Holdings, LLC prays for relief against Defendants Prime Capital Ventures, LLC and Kris Roglieri, as follows:

A. For judgment in the amount of $4 million, the amount of the Remaining ICA Payment;

B. For additional consequential damages, in an amount to be proved at trial, but exceeding $50 million;

C. For a judgment and order that Prime is the alter ego of Roglieri, and Prime's corporate form will therefore be disregarded, making Roglieri personally liable, along with Prime, for all damages caused to Onward by Prime;

D. For punitive damages, in an amount to be proved at trial, due to the Defendants' willful, malicious, and intentionally fraudulent conduct, which manifests a knowing and reckless indifference toward, and disregard of the rights of Onward, and others;

E. For prejudgment interest;

F. For an award of Onward's costs and attorney's fees; and

G. For such other and relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

DATED: November 13, 2023

**BUCHALTER, A Professional Corporation**

*/s/ Jack L. Darrington*
George W. Pratt
Jack L. Darrington
*Attorneys for Plaintiff Onward Holding, LLC*